IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**LISA THOMAS**                                                                                       **PLAINTIFF**

**v.**                                                         **CIVIL ACTION NO.:** 1:23cv244 HSO-BWR

**SANOFI-AVENTIS U.S. LLC**                                                           **DEFENDANT**

**COMPLAINT**
**JURY TRIAL DEMANDED**

**COMES NOW** Plaintiff, Lisa Thomas, by and through counsel, Watson & Norris, PLLC, brings this action against Sanofi-Aventis U.S. LLC to recover damages for violations of her rights pursuant to the Family and Medical Leave Act of 1993, as amended (FMLA), for FMLA retaliation and interference, Title VII for retaliation, and pursuant to the Americans with Disabilities Act, as amended (ADA), for disability discrimination and retaliation. In support of this cause, Plaintiff would show unto the Court the following facts to-wit:

**THE PARTIES**

1. Plaintiff, Lisa Thomas, is an adult female resident of Jackson County, Mississippi. Plaintiff is an eligible employee as currently defined by the FMLA and ADA.

2. Defendant, Sanofi-Aventis U.S. LLC, is a Delaware limited liability corporation licensed to do business in the State of Mississippi that may be served with process through its registered agent, Corporation Service Company, 109 Executive Drive, Suite 3, Madison, Mississippi 39110. The Defendant is a covered employer as currently defined by the FMLA, Title VII and the ADA.

**JURISDICTION AND VENUE**

3. This Court has federal question jurisdiction for actions that arise under the

FMLA, Title VII and the ADA.

4. This Court has jurisdiction over the parties and venue is proper in this Court.

5. Plaintiff timely filed a Charge of Discrimination with the EEOC, on February 13, 2023, a true and correct copy of which is attached as Exhibit "A." The EEOC issued a Dismissal and Notice of Right to Sue on June 28, 2023, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this cause of action within ninety (90) days of receipt of her Dismissal and Notice of Right to Sue.

## STATEMENT OF FACTS

6. Plaintiff is a 50-year-old female resident of Jackson County, Mississippi.

7. Plaintiff was hired on March 15, 2016, as a Specialty Sales Representative at Sanofi-Aventis U.S. LLC (SA).

8. Defendant is an employer as defined by the Family Medical Leave Act.

9. Defendant is an employer as defined by the Americans with Disabilities Act

10. Defendant is an employer as defined by Title VII of the Civil Rights Act of 1964.

11. In 2017, Plaintiff was transferred to the position of Executive Sales.

12. In December 2016, Plaintiff underwent spine surgery.

13. Plaintiff returned to work in March 2017.

14. In January 2020, Plaintiff was involved in a car accident in her company-provided vehicle.

15. Plaintiff subsequently suffered significant chronic orthopedic problems in her spine.

16. In the fall of 2021, Plaintiff was in the top 7% for consistent achievement in sales among sales representatives at SA.

17. By the end of 2021, Plaintiff had performed sufficiently to win a national award with the company.

18. Despite this superior achievement, however, Manager Frank Carbone gave Plaintiff a substandard rating citing nonspecific performance issues and thereby prevented her from receiving both a national award for the achievement and an annual raise that she would otherwise have received.

19. On September 21, 2022, Mr. Carbone placed Plaintiff on a Performance Improvement Plan (PIP).

20. The PIP alleged that "throughout 2022, [Plaintiff] has been coached multiple times as documented on [her] ability to execute impactful sales calls by setting up the problem at the beginning of the call and closing at the end of each call" and that "These gaps in Selling Acumen has a negative impact on sales results".

21. Plaintiff did not agree with this PIP, and she pointed out that her sales were 80-90% of the target goal. Despite the disagreement, Plaintiff signed the PIP.

22. Since much of the time, she was required to travel by car, Plaintiff made specific vehicle accommodation requests to SA multiple times during 2022.

23. Throughout the middle to late months of 2022, Plaintiff and SA personnel (i.e., Occupational Health Nurse Beth Murphy and FPS Partner Jennifer Lansman) were frequently involved in an interactive process, via email, regarding the ergonomic aspects of potential company vehicles to address Plaintiff's medical condition.

24. On October 31, 2022, following months of back and forth between Plaintiff and SA personnel regarding the appropriate vehicle to reasonably accommodate Plaintiff's medical condition, SA finally provided Plaintiff with the appropriate vehicle accommodation.

25. On November 1, 2022, Plaintiff was medically evaluated by Orthopedic Surgeon Charles Winters.

26. As a result of that evaluation, Dr. Winters determined that Plaintiff needed some continuous time off and to undergo surgery.

27. On November 2, 2022, Plaintiff received an email notification from Sedgwick that she had been approved for continuous leave beginning on November 1, 2022, with an estimated date of return of December 7, 2022.

28. Plaintiff was told that documentation would be sent soon for her to complete and return.

29. On November 3, 2022, Absence One Sedgwick Representative Emily F (full last name unknown) emailed Plaintiff documentation to give to her medical provider to complete so that Plaintiff could apply for FMLA leave.

30. The documentation indicated that it needed to be completed and returned by November 22, 2022.

31. On November 4, 2022, Plaintiff completed her portion of the SA documentation related to Short Term Disability and FMLA leave, in the anticipation of taking some continuous medical leave and undergoing surgery due to her orthopedic problems.

32. Plaintiff then gave the documentation to her medical provider, Dr. Winters, to complete his portion.

33. On or around November 4, 2022, Dr. Winters completed his portion of this documentation, explaining that Plaintiff needed continuous leave beginning November 1, 2022.

34. Dr. Winters then returned the completed documentation to Plaintiff.

35. On November 6, 2022, Plaintiff emailed the completed FMLA documentation to AbsenceOneMail@sedgwickcms.com.

36. On November 16, 2022, Plaintiff received a letter from Human Resources Representative Kathleen McLaughlin, informing her that she was terminated, allegedly for failing to meet the requirements of the PIP.

37. On February 13, 2023, Plaintiff filed an EEOC Charge of disability discrimination and retaliation.

38. On April 7, 2023, in response to Plaintiff's Charge, SA submitted a Position Statement to the EEOC.

39. SA's Position Statement alleges during 2018 through 2020, Plaintiff struggled, and her job performance reviews were not very good.

40. Plaintiff concedes that she struggled with her performance during that time, yet she contends she persevered and eventually made significant improvements.

41. In the 2021 Year End Performance Review, Plaintiff's rating increased substantially from a 1 in 2020 to a 4.

42. In that review, Mr. Carbone wrote, "You had a strong year and look to finish in the top 10%. Congratulations and I am very happy for you. I appreciate all that you have accomplished as a sales professional and I look forward to working with you in 2022. And, I feel confident that you will be in strong contention for another award-winning year…You have a very good sense of your territory and solid professional relationships which contributes to your performance…"

43. Plaintiff concedes there were constructive comments in the 2021 review as well, encouraging her to improve her communication, and she made efforts to comply with these recommendations.

5

42. SA's Position Statement alleges that in March 2022, Mr. Carbone placed Plaintiff on an Individual Improvement Plan (IIP), which focused on Plaintiff improving in the area of communication.

43. In an email to Plaintiff on April 7, 2022, regarding the issue of making calls, Mr. Carbone wrote, "…you have made significant progress throughout the quarter…This is an area that you have direct control of and you have truly improved."

44. Similarly, on April 22, 2022, Mr. Carbone emailed Plaintiff again and wrote, "I am extending your IIP an additional 30-days (June 3rd) based on the fact that you have demonstrated improvement in 4/5 areas in which we have discussed…You're making progress and trending in the right direction as it pertains to your execution of activity…"

45. On June 21, 2022, Mr. Carbone emailed Plaintiff and wrote, "You have consistently demonstrated the ability to meet the parameters of the IIP and have successfully completed your IIP…"

46. SA's Position Statement then alleges, however, that Mr. Carbone observed that [Plaintiff] was not having an impact in how she was interacting with Health Care Professionals.

47. Plaintiff contends that other than this vague criticism, no clear understanding is given as to how Plaintiff's performance allegedly declined after she received such positive remarks just a few months earlier.

48. SA's Position Statement alleges that the "PIP focused on two components of Plaintiff's call duties – "Setting up the Problem" and "Closing"…"

49. Regarding the first component, Mr. Carbone alleged that as a sales professional, "[Plaintiff's] goals is not to talk at your customers, but engage in 2-way meaningful conversations…"" Regarding the second component, Mr. Carbone alleged

6

that Plaintiff needed to work to "…deliver with more consistency…Closing with Impact!"

50. Plaintiff claims that her overall work performance was consistent, so much so that she achieved a national ranking of being a top sales representative (top 7%) in the company during the previous year (Spring 2021- Spring 2022).

51. Additionally, Plaintiff states that the calls that were mentioned in the PIP document were all good calls because they had a rating of "2".

52. Plaintiff contends that most representatives in the company have call ratings of "2" as well.

53. Plaintiff also asserts that she had previously asked for examples in which she was deemed to have performed poorly and inconsistently because those provided in her PIP were examples in which she had performed consistently well.

54. However, when requested, Mr. Carbone told Plaintiff that he "could not write war and peace" but provided no examples as to when she performed poorly and/or inconsistently during sales calls.

55. Plaintiff contends that such comments made about her inconsistent performance were non-descriptive and subjective, further targeting her shortly after her award-winning year.

56. Furthermore, Plaintiff states that despite her accolades received by corporate, Mr. Carbone continued to penalize her by giving her a negative performance review in April 2022.

57. After the negative performance review was issued, Plaintiff was no longer eligible for her annual raise and also not eligible to take the national award trip awarded to her by Corporate.

7

58. As such, Plaintiff contends that the false allegations further contradicted her performance in achieving top 7% of 300 sales reps employed by SA during the 2021-2022 year.

59. Furthermore, Plaintiff contends that the PIP stated that there were gaps that affected her overall performance; however, such vague and subjective comments does not reflect Plaintiff' overall sales achievements, which clearly reflect that she is far from inconsistent.

60. The PIP was presented to Plaintiff on September 21, 2022, and indicated that it would "be effectively immediately and [would] remain in place for 45 calendars, until November 5, 2022."

61. SA's Position Statement alleges the broad statement that "Plaintiff did not sufficiently improve her performance during the PIP"; yet it fails to give any clear explanation as to what deficiencies were allegedly observed.

62. On October 7, 2022, Mr. Carbone emailed Plaintiff and wrote, "I like to see that you're making an effort with these Core Competencies however, as you shared with me "I am just making sure I am going through my checklist of what I am being evaluated on when you're with me" should not be the way you embrace our field time together or your Performance Improvement Plan. Failure to focus on what we discussed when I am not with you is truly how you improve and these behaviors will be observed when I am working with you…it is up to you to improve when you're working by yourself and when I am working with you."

63. Plaintiff contends this email conveys a misunderstanding by Mr. Carbone.

64. When Plaintiff made the statement about 'going through her checklist' she was in no way suggesting that she only focused on making improvements while with Mr.

8

Carbone and not in general.

65. Rather, Plaintiff insists she made this statement as a sincere expression that she was trying very hard to demonstrate her improvement to him, i.e., the focus being on her hope that he would directly observe her improvement, not on the idea of her implementing improved behaviors only when he was observing.

66. This misunderstanding by Mr. Carbone evidenced in his email on October 7, 2022, was further perpetuated when he included it in an email on October 27, 2022, to Performance Management Team Member Kathleen McLaughlin.

67. Other than this mischaracterization of what Plaintiff meant by her statement, Mr. Carbone essentially claimed that Plaintiff had "demonstrated small improvements" but "is still not meeting expectations as stated in the PIP" in the two core competency areas of Setting up the Problem and Closing.

68. Subsequently, he recommends that Plaintiff be terminated.

69. Plaintiff asserts that despite her significant improvement in 2021 and the first half of 2022, because of his frustration about Plaintiff's orthopedic-related accommodation requests, Mr. Carbone became increasingly irritable toward her and allowed his objectivity related to her job performance to be lost.

70 Plaintiff states that just as she had made significant improvements in the recent past, i.e., in 2021 and early 2022, she responded diligently to the expectations of the PIP and had made substantial improvement in meeting the expectations.

71. SA's Position Statement alleges that on November 2, 2022, Plaintiff filed for FMLA leave "a mere three days before the identified end-date of her PIP", obviously conveying the implication that she did this deliberately, as though she was somehow trying to avoid the end of the PIP.

72. This allegation, however, fails to consider the fact that although Mr. Carbone and Ms. McLaughlin had apparently decided to terminate Plaintiff, she was in no way aware of this.

73. Moreover, as noted above, on November 1, 2022, it was Plaintiff's orthopedic surgeon, Dr. Winters, who decided that Plaintiff needed some continuous time off to undergo surgery.

74. Plaintiff was merely following the direction of her medical provider.

75. The subtle implication in SA's Position Statement that Plaintiff was trying to avoid something by taking FMLA leave mimics the hostile attitude toward Plaintiff's orthopedic disability that was conveyed to her by Mr. Carbone.

76. SA's Position Statement alleges that around November 9, 2022, both Mr. Carbone and Ms. McLaughlin attempted to communicate to Plaintiff about their decision to terminate her.

77. The SA Position Statement goes on to express surprise that Plaintiff "failed to respond to any outreach".

78. These allegations in SA's Position Statement only further illustrate the indifference that was shown toward Plaintiff's disability and her medical condition.

79. On November 9, 2022, fully aware that Plaintiff was dealing with the prospect of surgery and that she was in the process of obtaining FMLA leave, Ms. McLaughlin nevertheless emailed Plaintiff requesting that she (Plaintiff) meet with Mr. Carbone to address the issue of her performance plan.

80. After that, on November 16, 2022, Ms. McLaughlin emailed Plaintiff a termination letter.

## CAUSES OF ACTION

### COUNT I:  VIOLATION OF THE FMLA - INTERFERENCE

81. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 80 above as if fully incorporated herein.

82. It is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under the FMLA.

83. As a result of Defendant's interference with Plaintiff's rights to take leave pursuant to the FMLA described above, Plaintiff has suffered and continues to suffer significant lost pay and benefits.

84. The willful conduct of Defendant is evidenced by a consciously indifferent attitude towards employee's rights under the FMLA.  As a result of this conduct, liquidated damages should be assessed against Defendant.

85. Plaintiff also seeks all other relief, at law or in equity, to which she may show herself justly entitled.

### COUNT II:  VIOLATION OF THE FMLA - RETALIATION

86. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 85 above as if fully incorporated herein.

87. It is unlawful for any employer to discharge or discriminate against any individual for opposing any practice made unlawful by the FMLA.

88. As a result of Defendant's retaliatory acts described above, Plaintiff has suffered and continues to suffer significant lost pay and benefits.

89. The willful conduct of Defendant is evidenced by a consciously indifferent attitude towards employee's rights under the FMLA and its subsequent retaliation against Plaintiff.  As a result of this conduct, liquidated damages should be assessed against

Defendant.

90. Plaintiff also seeks all other relief, at law or in equity, to which she may show herself justly entitled.

### COUNT III: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)

91. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 90 above as if fully incorporated herein.

92. As described in more detail above, Defendant violated the ADA by terminating Plaintiff because of her disability and/or perceived disability.

93. The unlawful actions of the Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff. As such, Plaintiff is entitled to recover compensatory and punitive damages.

### COUNT IV: VIOLATION OF TITLE VII AND THE AMERICANS WITH DISABILITIES ACT (ADA) – RETALIATION

94. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 95 above as if fully incorporated herein.

95. Defendant unlawfully retaliated against Plaintiff for requesting reasonable accommodations under ADA for her disability and/or perceived disability.

96. Plaintiff has been harmed as a result of this retaliation, and the Defendant is liable to Plaintiff for the same.

97. The unlawful actions of the Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

98. The retaliatory actions of the Defendant are in violation of the Americans with Disabilities Act of 1990 and Title VII.

## **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully prays that the Court cause service to issue in this cause upon the Defendant and that this matter be set for trial. Upon trial by jury thereon, Plaintiff prays that the following relief be granted:

1. Back wages;
2. Reinstatement or front pay in lieu of reinstatement;
3. Lost benefits and other pecuniary losses;
4. Compensatory damages;
5. Liquidated damages;
6. Punitive damages;
7. A tax gross-up and all make whole relief;
8. All costs, disbursements, pre-judgment interest, post-judgment interest, expert witness fees, and reasonable attorney's fees allowed under the FMLA, Title VII and the ADA; and
9. Such further relief as is deemed just and proper.

THIS the 25th day of September 2023.

                                                Respectfully submitted,

                                                LISA THOMAS, PLAINTIFF

                                    By: /s Louis H. Watson, Jr.
                                           LOUIS H. WATSON, JR.  (MB# 9053)
                                           NICK NORRIS (MB# 101574)
                                           Attorneys for Plaintiff

OF COUNSEL:

WATSON & NORRIS, PLLC
4209 Lakeland Drive # 365
Flowood, Mississippi 39232-9212
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
louis@watsonnorris.com
nick@watsonnorris.com